UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Antonio Romero Williams,                   Civil No. 10-2610 (PAM/FLN)

          Petitioner,

     v.                                            **REPORT AND RECOMMENDATION**

Bruce Reiser, Warden of Rush City,

          Respondent.

___

Petitioner, *Pro Se*.
Matthew Frank, Assistant Minnesota Attorney General, for Respondent.

___

**THIS MATTER** came before the undersigned United States Magistrate Judge on a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person In State Custody filed by Antonio Romero Williams ("Petitioner"). (ECF No. 1.) Petitioner filed a memorandum in support of his petition, which the Court ordered to be stricken as a result of Petitioner's failure to comply with Local Rule 7.1(d). (ECF Nos. 3 and 7.) Petitioner then filed an amended memorandum. (ECF No. 9.) On August 26, 2010, Respondent filed an answer and memorandum in opposition to the petition. (ECF Nos. 13 and 14.) On September 24, 2010, the Clerk of Court received Petitioner's "Motion Not to Dismiss Petition for Habeas Corpus" (and a brief in support thereof), which the Court denied without prejudice. (ECF Nos. 21, 22 and 24.)

The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that the Petition for a Writ of Habeas Corpus (ECF No. 1) be **DENIED** and the case be **DISMISSED WITH PREJUDICE**.

# I. BACKGROUND

On February 20, 2004, a jury convicted Petitioner of first-degree burglary, two counts of kidnapping, second-degree assault, and of being a felon in possession of a firearm. *State v. Williams*, 2005 WL 2850287, at *2 (Minn. Ct. App. Nov. 1, 2005). On May 25, 2004, he was sentenced to a total of 240 months. *Id.* On direct appeal, the Minnesota Court of Appeals affirmed Petitioner's convictions on November 1, 2005 but reversed and remanded for re-sentencing. *Id.* at *1. The Minnesota Supreme Court denied review on January 25, 2006. *Id.* On remand, Petitioner was re-sentenced to a total of 153 months. *State v. Williams*, 2009 WL 112935, at *1 (Minn. Ct. App. Jan. 20, 2009). Petitioner then challenged his revised sentence on appeal. *Id.* The Minnesota Court of Appeals affirmed, and the Minnesota Supreme Court denied review on March 31, 2009. *Id.*

The undersigned accepts the facts of this case as stated by the Minnesota Court of Appeals in its opinion upon the Petitioner's first appeal:

> On the morning of August 24, 2003, R.A.G. was returning to her apartment when [Petitioner] and two accomplices forced her into the apartment at gunpoint. Her husband, R.G., and their three children were in the apartment at this time. [Petitioner] and his accomplices each were holding a gun, and [Petitioner] was waving his gun in the air and asking, "where's that b-tch at?" [Petitioner] was referring to A.T., a member of R.A.G.'s household at the time. [Petitioner] stated that he wanted to "kill" A.T. because she allegedly stole money from him the previous night. [Petitioner] ordered R.A.G. and R.G. to get down on the floor, and they complied, holding their three-year old down with them. The other children were sleeping in a separate room throughout the incident. [Petitioner] then searched the apartment for A.T. to no avail and again asked about the whereabouts of A.T. Because R.A.G. feared that [Petitioner] and his accomplices would hurt her and her family, she falsely told [Petitioner] that A.T. was across the street at another apartment building.
>
> [Petitioner] then ordered R.A.G. to take him to A.T., forcing her to leave the apartment at gunpoint. One of appellant's accomplices stayed in the apartment with R.G. and the children, forcing him to stand against the wall holding his daughter. R.G. testified that he feared that [Petitioner] and his accomplices would kill his wife or his children. Holding his gun into R.A.G.'s back, [Petitioner]

walked her to the other apartment building, but no one answered the door at the apartment where she had claimed A.T. was located. [Petitioner] spotted police officers when they exited the other apartment building, so he forced R.A.G. to go to the river with him, at which point he threw his gun into the river. The police later arrested [Petitioner] and his accomplices and retrieved the weapon from the river.

[Petitioner] was subsequently charged with first-degree burglary, second-degree assault, two counts of kidnapping, and felon in possession of a firearm. On September 12, 2003, the court appointed a public defender as appellant's legal counsel. The trial was scheduled to begin on December 10, 2003, but was continued until February 10, 2004, because of the public defender's trial schedule. During this time, [Petitioner] and his public defender began to experience differences regarding trial strategies. On February 10, 2004, the first day of trial, [Petitioner] stated, "I would like to fire [the public defender] as my attorney and I would like to ask the Court if I can hire a private counsel. If not, I will proceed to represent myself." [Petitioner] moved for a continuance to secure private counsel. At the hearing on this motion, the district court warned [Petitioner] by stating, "You are scheduled for a jury trial, Mr. Williams. It's very serious charges here, … so I wouldn't recommend that you represent yourself on this case." [Petitioner], however, explained that he had a dispute with his public defender over the public defender's refusal to "hire an investigator" and to speak with a person that [Petitioner] believed could be an important defense witness. Appellant's public defender agreed that they had a strained relationship because of a fundamental disagreement over how to proceed with the case.

The district court granted [Petitioner] a one-day continuance to secure private counsel. During arguments on the motion, the district court noted that [Petitioner] had been represented by counsel for four to five months without seeking other counsel and inquired about appellant's ability to secure private counsel. [Petitioner] stated that his family was prepared to hire a private investigator and private counsel, adding, "[T]here's plenty of lawyers out there, but my family has assured me that this is going to be taken care of." [Petitioner], however, immediately declined the continuance, stating, "I will represent myself. I will make that decision right now." His attorney was asked to remain as stand-by counsel.

Upon returning to the district court, [Petitioner] was again warned about proceeding pro se and was asked to state "clearly and unequivocally" whether he wanted to continue without an attorney. [Petitioner] responded, "I want to do it on my own." At that point, the district court ordered the prosecutor to supply [Petitioner] with all documents in her possession and to make the state's witnesses available to an investigator if [Petitioner] were to retain one. The district court also released appellant's public defender as standby counsel after [Petitioner] refused his help, noting that [Petitioner] appeared ready to proceed

>pro se given his attentiveness and ability to ask intelligent questions. [Petitioner] was given six days to prepare for his defense and hire an investigator before the court re-convened on February 17, 2004, for the omnibus hearing.
>
>At trial, [Petitioner] did not call any witnesses in his defense to controvert the testimony of the state's witnesses nor did he object to the jury instructions . . . .

*Williams*, 2005 WL 2850287, at *1–2.

"[Petitioner] raised five issues on direct appeal: (1) that he was denied his right to counsel when the district court denied his motion for a continuance in order to seek substitute counsel; (2) that there was insufficient evidence to support the kidnapping conviction; (3) that the district court committed plain error when it instructed the jury on the kidnapping charge; (4) that his sentence was improper under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); and (5) a variety of arguments made in his pro se brief," including lack of notice of the charges against him related to the filing of an amended complaint and prosecutorial misconduct related to the alleged withholding of impeachment evidence. *Williams*, 2009 WL 112935, at *1; *see Williams*, 2005 WL 2850287 at *1, *8; (ECF No. 15, App. 59, 77.) The Minnesota Court of Appeals affirmed the district court in all respects with the exception of Petitioner's sentence. *Williams*, 2009 WL 112935, at *1. Because *Blakely* had been decided before the appeal was filed, the appellate court reversed and remanded to the district court for re-sentencing. *Id.*

Petitioner then petitioned the Minnesota Supreme Court for review. (App. 175–83.) Although Petitioner raised his right to counsel, the sufficiency of the evidence and the adequacy of his sentence as "legal issues" in his brief, the sole issue on which Petitioner sought review to the Minnesota Supreme Court concerned the jury instructions given at trial regarding the

kidnapping charges. (App. 177, 180.) According to Petitioner, "the trial court's instructions, and the standard jury instructions, materially misstate the law on kidnapping." (App. 180.) The Minnesota Supreme Court denied review on January 25, 2006. (App. 250.)

In the instant action, Petitioner raises a number of arguments in support of his petition for habeas relief.  Petitioner claims he was denied his constitutional right to counsel in a variety of ways. (ECF No. 1.) He further asserts that the prosecution failed to disclose favorable impeachment material and failed to inform him of the charges against him by not providing him with a copy of the amended complaint. (ECF No. 1.)

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standard that governs this Court's review of habeas corpus claims raised by individuals in state custody.  The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute and how it should be applied by the federal district courts. The Court held that:

> [A] state-court decision can be "contrary to" this Court's clearly established precedent in two ways.  First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially

5

> indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours . . . .
>
> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id*. at 405, 413.  The Court further explained the "unreasonable application" clause:

> A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

*Id*. at 409, 411.

A writ of habeas corpus may also be available where the state court's resolution of a case is based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).  In other words, habeas relief may be granted if the state court's judgment is based on findings of fact that could not reasonably be derived from the evidentiary record. When reviewing a state court decision, however, a "federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000), citing 28 U.S.C. § 2254(e)(1).

Therefore, a federal district court is not permitted to conduct its own de novo review of a habeas petitioner's constitutional claims.  Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts.  Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in *Williams*. Demonstrating actionable

6

error requires that a petitioner, as a threshold matter, present a federal question in his petition for relief. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

### III. LEGAL ANALYSIS

In the case at hand, Petitioner has procedurally defaulted on his claims by failing to exhaust his state court remedies.

It is well established that a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Rose v. Lundy*, 455 U.S. 509 (1982). To satisfy the exhaustion of state court remedies requirement, a prisoner must "fairly present" his or her claims to the highest available state court before seeking relief in federal court. *O'Sullivan*, 526 U.S. at 845; *see also Copeland v. Minnesota*, 2004 WL 1701034, at *2 ("The exhaustion requirement is not satisfied unless the habeas petitioner has raised all of his claims at every available level of the state court appeal process.") In order for a state court to have the opportunity to remedy alleged violations of a prisoner's federal rights, a prisoner must alert the state court that he has raised the claim under the United States Constitution. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995). The Eighth Circuit has stated: "To satisfy the 'fairly presented' requirement, [petitioner] was required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent constitutional issue' in the . . . state court." *Abdullah v. Groose*, 75 F.3d 408, 411–12 (8th Cir. 1996) (quoting *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993)).

When a prisoner has not exhausted his state court remedies for a particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim has been procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A claim that has been procedurally defaulted will not be entertained in a federal habeas corpus proceeding unless the petitioner has shown "cause and prejudice" to excuse his procedural default or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. *Id.* The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that a 'constitutional violation has probably resulted in the conviction of one who is actually innocent." *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995), quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Here, Petitioner failed to exhaust his state court remedies by failing to seek review from the Minnesota Supreme Court of any of the issues raised in his habeas petition. On direct appeal, Petitioner argued: (1) that he was denied his right to counsel when the district court denied his motion for a continuance in order to seek substitute counsel; (2) that there was insufficient evidence to support the kidnapping conviction; (3) that the district court committed plain error when it instructed the jury on the kidnapping charge; (4) that his sentence was improper under *Blakely v. Washington*, 542 U.S. 296 (2004); and (5) that the prosecutor committed misconduct by failing to provide him with a copy of the amended complaint and by withholding impeachment evidence. *See Williams*, 2005 WL 2850287, at *1–*8. The Minnesota Court of Appeals affirmed Petitioner's convictions on direct appeal, however, Petitioner limited his petition for review to the Minnesota Supreme Court to only his argument pertaining to the jury

instruction for kidnapping. (*See* App. 180.)  Petitioner neither sought review of the appellate court's decisions involving his right to counsel or any of the other issues raised in his petition for habeas corpus relief, nor does he challenge the kidnapping jury instruction in the instant case. As such, Petitioner could not seek further review of his claims in state court, and has thus procedurally defaulted on his claims.  *See State v. Knaffla*, 243 N.W.2d 737, 741 (1976) ("[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.") Because Petitioner has not demonstrated his innocence, or cause and actual prejudice to excuse his procedural default, this Court is precluded from considering his petition.

Applying the relevant standard for procedural default described above, Petitioner has failed to exhaust his state court remedies and has thus procedurally defaulted on his claims. For the reasons articulated herein, the Court concludes that Petitioner is not entitled to a substantive evaluation of his constitutional claims for habeas relief pursuant to 28 U.S.C. § 2254(d). Consequently, all of Petitioner's claims must be dismissed, and his petition must be denied.

## IV.   RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1)   Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 1) be **DENIED**;

2)   This matter be **DISMISSED WITH PREJUDICE**; and

3)   **JUDGMENT BE ENTERED ACCORDINGLY**.

It is further recommended, pursuant to 28 U.S.C. § 2253(c), that a Certificate of Appealability not be issued.

DATED: May 25, 2011 *s/ Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 8, 2011**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.